### No. 2081.
### Second Circuit Appeal.

---

### H. C. WALSWORTH v. JACKSON PARISH SCHOOL BOARD

---

(October 17, 1924, Opinion and Decree.)

---

*(Syllabus by the Editor)*

1. **Louisiana Digest, Sales—Par. 44, 45, 60; Education—Par. 6.**
Where a school board, acting under Section 9 of Act 120 of 1916, ordered an election which voted a special tax

to re-roof and otherwise repair the school building, the person receiving the order for the material understood that payment was to be made by certificates of indebtedness based upon the tax or by money realized ·from the sale of them.

**2. Louisiana Digest, Sales—Par. 150.**
Where the seller of roofing material understood that payment by the school board was to be made by certificates of indebtedness, he breached his contract by refusing to deliver until cash was received although the certificates were offered in payment.

Appeal from the Parish of Jackson, Hon. Oglesby, Judge.

This is a suit to recover the purchase price of materials which had not been delivered.

There was judgment for plaintiff and defendant appealed.

Judgment reversed.

Moss S. Peters of Winnfield, La., attorney for plaintiff.

Wm. J. Hammond of Jonesboro, La., attorney for defendant.

PORTER, J. By this suit, the plaintiff seeks to recover judgment for $497.10, and interest, against the School Board of Jackson Parish. Article Two of plaintiff's petition is as follows:

"Western School District, situated and located within the Parish of Jackson, by authority of the Jackson Parish School Board, and in the manner authorized by law, voted a special tax of two (2) mills on the dollar for a period of two (2) years to be used in re-roofing and otherwise repairing the school building situated in said Western School District."

After promulgation of the vote, the plaintiff submitted a bid to furnish the material for said roof, which was accepted by the Board. Plaintiff is not a dealer in roofing material, but is the agent of a concern which sells it, and he, we presume, gets a commission on what he sells. The material was shipped with a draft attached to the bill of lading, and when it came, plaintiff paid the draft and took possession of the material.

The plaintiff refused to deliver the material to the School Board, or to a committee of its members which had charge of the matter, unless he was paid in cash, or unless the committee would secure the amount by a note signed by a certain number of citizens.

It appears that certificates had been issued against the tax levied as above stated, and the committee tried to get the local Bank to cash the certificate in order to get the money to pay plaintiff, but was unsuccessful.

After a delay of several months, during which unsuccessful efforts to realize on the certificates were made by the School Board, and the plaintiff still refusing to deliver the material except upon the terms stated, the Board made a contract with another party to furnish the material and do the work, and accept as the price thereof the said certificates.

The testimony shows that there was urgent need for a new roof on the building. It is not alleged, nor is there any contention, that the Board was guilty of fault in failing to do everything that was necessary to secure cash for the certificates. The sole theory upon which the suit is predicated is that there was a completed contract of sale between the plaintiff and the defendant, and that defendant violated the contract by refusing to accept the thing sold and paying the price in cash.

If it were an ordinary contract, the plaintiff's position would be a strong one, but there are peculiar features in the contract which take it out of the general class of

sales. It is not contended that the Board agreed to pay cash for the material. The plaintiff, when he ordered the material, was fully aware of the fact that the tax had been voted in a particular locality of the Parish for the purpose of raising funds for the repair of the school building in question, and he must have known that the reason for the election was because it was not deemed possible or expedient by the school authorities to pay the price out of the general fund. And we think that these facts ought to be considered in connection with the contract and as a part of it.

The plaintiff testified, in part, as follows:

Q. "Mr. Walsworth, when you state this contract was made with you, you knew that the school board's means of payment was from the collection of taxes that had been voted in the Western School District?"

A. "I knew that was all beside the sale of the certificates."

Q. "You knew that the taxes would be levied and collected for two consecutive years?"

A. "Yes sir." ·

In another place, he was asked to detail the contract, and answered:

"They wanted me to get Mr. Stinson to cover it, and I sold them the roofing at $6.20 a square, and they carried Mr. Stinson there to measure it and get the amount of the material, and he came back and gave it to me, and Mr. Odom authorized me to make the order with the understanding that they were to place the certificates and get the cash and pay me when the roofing got here."

It is true that plaintiff says in another part of his testimony that the understanding was that "they were to pay cash for the roofing when it came", but in view of his testimony first above quoted, as well as of the testimony as a whole, it is clear that his last quoted statement is a mere conclusion of his.

Mr. McBride, a member of the School Board and of the committee which had this particular matter in hand, testifies as a witness for the plaintiff as follows:

Q. "Mr. McBride, how did you tell Mr. Walsworth that the Board would arrange to pay for this roofing and work?"

A. "We would pay for it from the proceeds of this tax and the Board had some certificates issued that we expected to sell."

It is shown, we think, beyond any doubt, that when the order for the roofing was given, it was understood by all parties that it would be paid for by the certificates of indebtedness, based upon the tax, or by the money realized from a sale of them.

Mr. Odom, Parish Superintendent, and a member of the committee with which the plaintiff dealt, testifies that he supposed the plaintiff would take the certificates, and that since he had been in office, the people that the Board had contracted with would take certificates and sell them themselves.

In calling the election and in voting the special taxes, for the repair of the building in question, the School Board and the people of that District availed themselves of the right granted by the last clause of Section 9 of Act 120 of 1916, which is as follows:

"Communities deserving better facilities and longer sessions than can be provided by a distribution of the general funds giving equal sessions to all schools, shall secure the same by voting special taxes, or obtaining additional funds from other sources than the current or general school funds."

The action of the Board in the premises was a declaration that the amount necessary to repair the building could not be taken from the general fund, and this declaration was binding upon the public, and particularly upon the plaintiff, who had

both constructive and actual knowledge of the fact. It was notice to all persons who had dealt with the Board in connection with the matter, that they must rely exclusively upon the special tax for their compensation. We repeat that there is no suggestion of any fault on the part of the Board in connection with the matter. It did nothing that it ought not to have done and left nothing undone that it ought to have done.

The whole theory upon which the demand is predicated, as shown by the brief of plaintiff's able counsel, is that the Board violated the contract of sale when it failed to pay in cash the price of the roofing when the plaintiff was ready to deliver it.

It is true, as a general rule, that where one orders a thing for another at a price agreed upon, a cash price will be inferred, and the failure to pay, when the thing is ready to be delivered, will constitute a violation of the contract. But when it is understood by both parties, as it was in this case, that the price was to be paid out of a certain fund, created in a certain manner—and particularly when the fund is created in accordance with a specific law—the case is taken out of the general rule.

For this reason, we do not think that the Articles of the Code and the decisions cited by counsel for plaintiff have any application.

The plaintiff has—or had at the time the case was tried—the material in his possession. We gather from the evidence that it is standard material, and, with the exception, perhaps, of a few pieces of special size or shape, suitable for roofing generally, and can be sold for approximately as much as it cost.

The judgment appealed from is therefore reversed and set aside, and the demand of plaintiff is rejected at his cost.